(No. 3337— ▮▮▮▮▮▮▮▮▮)

HARRY E. JONES, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 14, 1941.*

GEORGE W. DOWELL, for claimant.

GEORGE F. BARRETT, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

MR. CHIEF JUSTICE HOLLERICH delivered the opinion of the court:

For some time prior to and on October 28, 1938 claimant was in the employ of the State of Illinois as a guard at Security Hospital, Menard, Illinois, an institution for the incarceration and treatment of the criminal insane, and was working in the ward known as the violent ward. For more than a year prior to the last mentioned date he was paid $118.75 per month, and in addition thereto was furnished room and board which are considered of the value of $24.00 per month.

On the last mentioned date, about 8:30 o'clock A. M., while the claimant was taking a patient to his cell, the patient turned and struck him forcibly in the face and knocked him against the bars of a cell. The patient was about thirty years of age, over six feet tall, and of powerful build, and the claimant was struck so hard that he was rendered unconscious for about an hour and a half. He was taken to the doctor's office and was first treated by Dr. Goldstein, a patient at the institution. Thereafter Dr. Dick and Dr. McManus, institution doctors, took over the case. About 11:30 o'clock A. M. claimant was taken to the prison for an X-ray examination. Claimant

was then permitted to go home, and upon his arrival at home, his wife took him to Dr. S. I. Wald who examined him and sent him home to bed, where he remained for five days. He was then taken to see Dr. McManus relative to an operation, but Dr. McManus refused to consent to the operation and said that it was dangerous and might result in more trouble.

Claimant was off duty three months and then went back to work and was given outside work at his former pay. He was paid in full during the time that he was off duty as aforesaid. On March 25th he was taken sick with the flu and went home and remained in bed until May 2. He was then transferred to Joliet, but his physical condition was such that he was unable to do the work. He gave out on the second day and had to quit. On September 12, 1939 he started work for the WPA at $42.00 per month.

From a report filed by Rodney H. Brandon on March 28, 1941 it appears, however, that during January, 1940 claimant again began work at Menard and continued to work and receive his full pay of $118.75 per month for all of the time up to and including February, 1941, except that he only worked twenty-two days during the month of April, 1940. From claimant's statement in open court it appears that he is still in the employ of the respondent.

Claimant complains of pain, dizziness in the head, headaches, nervousness and a numb feeling about the point or place of injury to the face, and claims that lifting or stooping over bothers him, and that he is unable to do the work he was able to do prior to the injury.

Claimant filed his complaint herein on December 27, 1938 and an amended complaint on February 7, 1939. In such amended complaint he asks for compensation under the provisions of the Workmen's Compensation Act for the following, among other items, to wit: fifty per cent (50%) loss of hearing of the left ear; fifty per cent (50%) loss of sight of the left eye; partial paralysis of the left side of the face; and serious and permanent disfigurement to the head and face.

Claimant's only right to recover in this case is under the terms and provisions of the Workmen's Compensation Act, and the only disabilities for which compensation can be paid are those specified in the Act. The evidence fails to show that claimant has sustained the loss of 50% of the hearing of his left ear, but even if the evidence did disclose such fact, there

is nothing in the Compensation Act which authorizes an award for such disability, nor does such Act authorize the payment of compensation solely for a partial paralysis of the face.

The Compensation Act does provide for compensation for the loss of the whole or any part of the sight of an eye, but the evidence in this case does not show any loss of vision and consequently no allowance can be made to claimant on that account.

Claimant was temporarily totally disabled for three months, but during that time he received payments of salary aggregating the sum of $260.49, which was in excess of the amount he was entitled to receive under the provisions of the Compensation Act.

Aside from the temporary total disability as aforesaid, and for serious and permanent disfigurement to the face, the only disability for which claimant can claim compensation is for permanent disability, either total or partial. There is no claim for permanent total disability, and there is no evidence in the record upon which we can base an award for permanent partial disability.

Section eight (8), Paragraph (d) of the Compensation Act provides as follows:

"If, after the injury has been sustained, the employee as a result thereof becomes partially incapacitated from pursuing his usual and customary line of employment, he shall, except in the cases covered by the specific schedule set forth in Paragraph (e) of this section, receive compensation, subject to the limitations as to time and maximum amounts fixed in Paragraphs (b) and (h) of this section, equal to fifty percentum of the difference between the average amount which he earned before the accident and the average amount which he is earning or is able to earn in some suitable employment or business after the accident."

From the record it appears that for approximately a year prior to March 1, 1941 claimant has earned the same amount which he was earning prior to the accident. The record does not disclose his physical condition during such period, and consequently there is nothing in the record upon which we can base an award for permanent partial incapacity.

Claimant testified in open court and appeared for examination as to the nature and extent of the disfigurement to his face.

Such examination disclosed a sunken left cheek bone, known in medical parlance as a Zygomatic arch, resulting in

a marked flatness or depression of that portion of the face; also a scar approximately two inches in length extending across the left eye brow diagonally down to the left cheek bone.

The aforementioned injury has resulted in an intermittent twitching of claimant's left eye lid and the muscles of the left side of his mouth, which accentuate the disfigurement.

Upon consideration of all of the facts in the case, we find as follows:

That on October 28, 1938 claimant and respondent were operating under the provisions of the Workmen's Compensation Act of this State; that on said date claimant sustained accidental injuries which arose out of and in the course of his employment; that notice of the accident was given to said respondent and claim for compensation on account thereof was made within the time required by the provisions of such Act; that the earnings of the claimant for the year preceding the accident were $1,713.00, and his average weekly wage was $32.94; that claimant at the time of the injury was forty-eight years of age; and had one child under the age of sixteen years; that all necessary first aid, medical, surgical and hospital services were provided by the respondent, except as to the services furnished by Dr. S. I. Wald; that claimant was temporarily totally disabled from the date of his injury as aforesaid to January 28, 1939, to wit, for a period of thirteen (13) weeks; that he has also sustained a serious and permanent disfigurement of the head and face; that he was compelled to and did incur expenses in the amount of $56.50 for medical services; that the sum of $260.49 has been paid by the respondent to apply on the compensation due the claimant as aforesaid.

We further find that the claimant is entitled to have and receive from the respondent the sum of Fifteen Dollars ($15.00) per week for thirteen (13) weeks' temporary total disability, in accordance with the provisions of Paragraph (b) of Section eight (8) of the Workmen's Compensation Act; also the further sum of Six Hundred Sixty-seven and 50/100 Dollars for serious and permanent disfigurement to the head and face, payable in weekly installments of $15.00; also the sum of Fifty-six Dollars and Fifty Cents ($56.50) for medical services of Dr. S. I. Wald as aforesaid, making in all the sum of Nine Hundred Nineteen ($919.00) Dollars;—from

which must be deducted the sum of Two Hundred Sixty Dollars and Forty-nine Cents ($260.49) heretofore paid by the respondent as aforesaid, making a net amount remaining due the claimant of Six Hundred Fifty-eight and 51/100 ($658.51).

We further find that all compensation due to the claimant as aforesaid has accrued at this time.

Award is therefore entered in favor of the claimant, Harry E. Jones, for the sum of Six Hundred Fifty-eight and 51/100 ($658.51) Dollars, payable as follows:

To the claimant, Harry E. Jones, the sum of Six Hundred Two and 01/100 ($602.01) Dollars.

To the claimant, Harry E. Jones, for the use of Dr. S. I. Wald, the sum of Fifty-six and 50/100 ($56.50) Dollars.

Total, Six Hundred Fifty-eight and 51/100 ($658.51) Dollars.

This award, being subject to the provisions of an Act entitled "An Act Making an Appropriation to Pay Compensation Claims of State Employees and Providing for the Method of Payment Thereof," (Illinois Revised Statutes, 1939, Bar Association Edition, Chapter 127, Pars. 180-181) and being subject also to the terms of an Act entitled "An Act Making Appropriations to the Auditor of Public Accounts for the Disbursement of Certain Monies Until the Expiration of the First Fiscal Quarter After the Adjournment of the Next Regular Session of the General Assembly," approved July 1, 1939 (Session Laws 1939, page 117); and being, by the terms of the first mentioned Act, subject to the approval of the Governor, is hereby, if and when approval is given, made payable from the appropriation from the General Revenue Fund in the manner provided by the foregoing Acts.